UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**MICHAEL BYRN**, and<br>**PATRICIA BYRN**,<br><br>          Debtors. | Case No. **08-60513-13** |

# MEMORANDUM OF DECISION

At Butte in said District this 21st day of November, 2008.

Confirmation of Debtors' Chapter 13 Plan is pending in this Chapter 13 case. The Chapter 13 Trustee filed objections to confirmation based on Debtors' failure to satisfy the "disposable income" requirement of 11 U.S.C. § 1325(b)(1)(B), and that Debtors are not entitled to deduct $200 for motor vehicle ownership/lease expense on their Form B22C, Line 29, under *In re Deadmond*, 2008 WL 191165 (D. Mont. 2008). A hearing on confirmation was held after due notice at Great Falls on October 24, 2008. The Debtor Michael Byrn ("Michael") appeared and testified, represented by attorney Gary S. Deschenes of Great Falls. The Standing Chapter 13 Trustee Robert H. Drummond, of Great Falls, Montana, appeared in opposition. At the conclusion of the parties' cases-in-chief the Court closed the record and took the matter under advisement. After review of the record and applicable law, the Trustee's disposable income objection will be sustained and confirmation denied for the reasons set forth below, but the Trustee's objection based on the $200 vehicle expense is overruled.

This Court has jurisdiction of this Chapter 13 case under 28 U.S.C. § 1334(a).

1

Confirmation of Debtors' Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

At issue is: (1) Whether the Debtors must commit projected disposable income calculated from "current monthly income," defined at 11 U.S.C. § 101(10A), to payments under their Plan even though the Debtors no longer have income which they earned from a second job during the 6-month period immediately preceding the date of the commencement of the case; and (2) whether Debtors may claim a $200 transportation ownership/lease expense on Line 29 of Form 22C for their older vehicles when they are not making a payment to an underlying creditors on the vehicle.

## FACTS

Debtor Michael Byrn is employed driving a mail truck for the United States Postal Service ("USPS"). Michael testified that, during the six months prior to filing his bankruptcy petition, he was employed at a second job driving a truck for a bakery. He testified that he was paid $270 each 2 weeks by the bakery, and $1,133 every 2 weeks by the USPS. His USPS income has not changed.

Michael testified that the United States Department of Transportation ("DOT") recently changed its regulation[1] mandating rest periods for persons employed driving trucks. He testified that the DOT regulation required him to take 10 hours off between driving, and allows him to drive in the morning for only 3 hours. As a result, Michael testified, he still has his main job driving a truck for the USPS, but he could not continue with his second job driving for the bakery and lost the second job in June 2008.

Debtors filed their Chapter 7 petition on April 30, 2008, with their Schedules, Statement

---

[1] Michael cited the regulation as 49 CFR Part 395.

2

of Financial Affairs, notices, payroll advices, and Form B22A (Official Form 22A) "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation".  On Schedule B Debtors listed 3 motor vehicles which Michael testified they own:  a 2001 Ford Escort which Michael testified has a lien against it held by Montana Federal Credit Union; a 1995 Ford Taurus; and a 1988 Dodge Aries.  They purchased the Ford Taurus and Dodge Aries in 2007.  Michael testified at trial that they owe about three remaining payments on the Ford Escort of approximately $150 each before it is paid off, and owe no payments on either the Taurus or the Aires.  Schedules I and J show Debtors' combined monthly income in the amount of $3,770.86 exceeds their expenses of $3,633.00, by the amount of $137.86.  Debtors filed amended Schedules I and J on June 24, 2008, reducing their income to $3,557.12 and reducing their expenses to $3,613.00, slowing a monthly deficit of $55.88.

      The United States Trustee filed a motion to dismiss the Chapter 7 case for presumption of abuse under 11 U.S.C. § 707(b) based upon overstated ownership expenses for vehicles, other overstated expenses and understated income.  Debtors filed an objection and set the U.S. Trustee's motion for hearing, contending that with the loss of Michael's second job they do not have disposable income.  They also filed further amended Schedules I and J and an amended Form 22C.  Schedule I was amended to increase their combined monthly income to $3,824.53.  Schedule J left their expenses at $3,613.00, leaving monthly net income in the amount of $211.53.  Prior to the hearing, Debtors moved to convert their case to Chapter 13 and the case was converted on August 12, 2008.

      On September 2, 2008, Debtors filed another amended Form B22C (Docket No. 25), checking the boxes that the applicable commitment period is 5 years and disposable income is

determined under § 1325(b)(3). Part I, calculated using monthly income derived during the six calendar months prior to the filing of the petition ending on the last day of the month before the filing, lists total monthly income in the amount of $5,691.85, including $3,993.42 for Michael including his income for the second job driving the bakery truck. Part III established that Debtors were above-median income.

Line 28 of Form B22C lists the local standard transportation ownership/lease expense for the first vehicle in the amount of $463.65. Line 29 lists an ownership/lease expense for a second vehicle in the sum of $200.00, to which the Trustee objects. Line 47 lists Debtors' $25.35 monthly payment on their Ford Escort. Total adjustments to determine disposable income are listed at Line 58 in the sum of $4,943.59, leaving a monthly disposable income on Line 59 in the sum of $748.26. However, Debtors' Chapter 13 Plan (Docket No. 26) proposed a monthly payment in the amount of only $211.00 for 60 months. The Trustee objected to confirmation because Debtors' Plan does not pay the projected disposable income derived under the means test of § 1322(b) of $748.26.

Michael testified that he has searched for another second job but has not found one. Because he lost his second job, Michael testified that he no longer has income from the second job which totaled $270 every 2 weeks, which was included in Debtors' means test. Although Line 59 of Form 22 shows excess monthly income in the sum of $748.26, Michael testified that he no longer has that much income and is not able to pay that now in a plan. Under cross examination Michael testified that he did not bring documents to the hearing supporting his contention that he is not able to pay the $748.26 shown by the means test. He testified that he gave his pay stubs to his attorney, but they were not offered into evidence.

Michael testified that his older cars break down and require more maintenance than his newer car. He testified that both his Ford Taurus and Dodge Aries have transmission and engine problems, and the Aries needs $300.00 for front end suspension parts. So far, he testified, he has not needed to repair the transmissions, but he estimated that he will need at least an average of $200.00 per month for vehicle repairs, plus $400 to $500 for tires. Michael admitted that he cannot explain how he came up with the $200 per month figure. Under cross examination Michael testified that he did not bring any documentation regarding his vehicle repair estimates to the hearing, but that he estimated 5 years worth of vehicle repair expense for purposes of his bankruptcy.

## DISCUSSION

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met. *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995)*; In re O'Connor*, 2008 WL 4516374 (Bankr. D. Mont. 2008); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *In re Tranmer*, 355 B.R. 234, 241 (Bankr. D. Mont. 2006).

The Trustee's objection raises the issue of the "disposable income" test under § 1325(b)(1)(B) which provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> \* \* \* \*
>
> (B) the plan provides that all of the debtor's projected disposable income to be

> received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to made payments under the plan.

*Tuss*, 360 B.R. at 690; *Tranmer*, 355 B.R. at 241. The Ninth Circuit recently explained this requirement:

> If a trustee or holder of an allowed unsecured claim objects to the confirmation of a plan that does not propose to pay unsecured claims in full, the court may confirm the plan only if the plan provides that all of the debtor's "projected disposable income"[2] received during the "applicable commitment period" is applied to make payments under the plan. 11 U.S.C. § 1325(b)(1). "Projected disposable income" is not a defined term in the Bankruptcy code. However, "disposable income" is defined in § 1325(b)(2). Reading the statute as requiring "disposable income," as defined in subsection (b)(2), to be projected out over the "applicable commitment period" to derive the "projected disposable income" amount is the most natural reading of the statute, and it is the one we adopt.

*Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 872, 876 (9th Cir. 2008).

"Disposable income," as defined at § 1325(b)(2), underwent substantial revision in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA"). *Tuss*, 360 B.R. at 690; *Tranmer*, 355 B.R. at 241. BAPCPA became effective for purposes of the instant contested matter on October 17, 2005. Section 1325(b)(2) now provides, in pertinent part:

> For purposes of this subsection, "disposable income" means current monthly income[3] received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended —
>
> (A)   (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the

---

[2]The applicable commitment period is not at issue in the instant case.

[3] "Current monthly income" is defined at 11 U.S.C. § 101(10A).

6

> petition is filed; and
>
> > (ii) for charitable contributions (that meet the definition of "Charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

### A. Current Monthly Income – 11 U.S.C. § 101(10A).

"Current monthly income" is defined at § 101(10A):

> The term 'current monthly income' –

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on –
  (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

  (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and

(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

The Ninth Circuit in *Kagenveama* at footnote 1 provides the following guidance:

> Disposable income is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . ." 11 U.S.C. § 1325(b)(2). Current monthly income, as used here, is a new term under BAPCPA defined as "the average monthly income from all sources that the debtor receives" during the 6-month period preceding the commencement of the case or a date upon which the current income is determined by the court. 11 U.S.C. § 101(10A)(A). Rule 1007(b)(6) of the Federal Rules of Bankruptcy Procedure requires a debtor to file a statement of current monthly income on Form B22C. Section 1325(b)(3) requires that if a debtor's annualized current monthly income is greater than the median family income of similarly-sized households, then "amounts reasonably necessary to be expended are determined in accordance with § 707(b)(2).

*Kagenveama*, 541 F.3d at 872 n.1.

In the instant case no dispute exists that the Debtors are above-median income and that the applicable commitment period is 5 years. No dispute exists that Debtors included their income on Form B22C correctly at Lines 2 and 11, since Debtors included the income from Michael's second job in calculating their current monthly income.

Debtors argue that they no longer have the income from Michael's second job and therefore cannot pay the projected disposable income shown on Line 59 in the amount of $748.26. Debtors want their Plan confirmed notwithstanding a payment of only $211.00 per month. However, their Plan cannot be confirmed.

This Court applies a mechanical test in which its discretion to determine the reasonableness of a debtor's expenses in calculating disposable income has been curtailed by BAPCPA. *Tranmer*, 355 B.R. at 243-44, 246; *Tuss*, 360 B.R. at 691-92, 695. The Ninth Circuit in *Kagenveama* agreed and set forth the controlling authority in this circuit:

> The revised "disposable income" test uses a formula to determine what expenses are reasonably necessary. *See* 11 U.S.C. § 1325(b)(2)-(3). This approach represents a deliberate departure from the old "disposable income" calculation, which was bound up with the facts and circumstances of the debtor's financial

8

affairs. *In re Winokur*, 364 B.R. 204, 206 (Bankr. E.D. Va. 2007); *In re Farrar-Johnson*, 353 B.R. 224, 231 (Bankr. N.D. Ill. 2006) (stating that "[e]liminating flexibility was the point: the obligations of [C]hapter 13 debtors would be subject to clear, defined standards, no longer left to the whim of a judicial proceeding") (internal quotations omitted).

\* \* \* \*

> We decline to follow the line of cases holding that Form B22C creates a presumptively correct definition of "disposable income."

*Kagenveama*, 541 F.3d at 874-75; *but cf., In re Pak*, 378 B.R. 257, 267 (9th Cir. BAP 2007) (disposable income under § 1322(b)(2) is merely a starting point for deriving projected disposable income).

The Court sympathizes with the Debtors. No dispute exists that Michael lost his second job because of the new federal regulation. A leading commentator discusses this circumstance:

> Because of the rule concerning when the six months is calculated, waiting until a new month begins may increase or decrease the current monthly income of a debtor with irregular income. Sometimes, if a debtor has been unemployed or otherwise lost or gained income, waiting a month or two may radically change that amount. Of course, the debtor's actual income at the time of the petition may be significantly above or below the "current monthly income."

2 COLLIER ON BANKRUPTCY, ¶ 101.10A (15th ed. 2008).

The Court does not have the discretion to depart from the formula approach and confirm Debtors' Chapter 13 Plan with a payment of $211.00 because of Michael's lost employment, instead of the $748.26 in disposable income shown by Debtors' Form B22C. Under *Kagenveama* such a departure would constitute reversible error. As the Ninth Circuit explained in another context:

> If the changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute. *See* [*Lamie v. United States Tr.*, 540 U.S. 526, 542, 124 S.Ct. 1023, 157 L.Ed.2d 1024

9

> (2004)].
>
> Furthermore, Chapter 13 trustees were aware of the change in the law and notified Congress of their concerns before BAPCPA was passed, but Congress failed to act. [*In re Alexander,* 344 B.R. 742, (Bankr. E.D. N.C. 2006)].
>
> \* \* \* \*
>
> We must enforce the plain language of the Bankruptcy Code as written. We may not make changes to the plain language of the Bankruptcy Code based on policy concerns because that is the job of Congress.
>
> \* \* \* \*
>
> We stress that nothing in our opinion prevents the debtor, the trustee, or the holder of an allowed unsecured claim to request modification of the plan after confirmation pursuant to § 1329. Here, we are dealing with the plan confirmation requirements of § 1325, not plan modification requirements under § 1329. . . . Because Congress directly addressed the modification of plans in other sections, we need not transform § 1325 into a plan modification tool.

*Kagenveama*, 541 F.3d at 875, 877.

Because the Debtor's $211 plan payment does not match their disposable income calculated on Form B22C of $748.26 required under the formula approach under *Kagenveama,* the Chapter 13 Trustee's disposable income objection based on the lost income from Michael's second job must be sustained and confirmation must be denied.

**B. Old Vehicle Expense.**

This Court's decision, *In re Kaufman*, 2008 WL 3878005, *4 (Bankr. D. Mont. 2008) cited *Kagenveama* for the position that for above median income debtors, reasonably necessary expenses are calculated using the "Means Test" of § 707(b)(2)(A) and (B). No question exists that Debtors in the instant case are above median income, and like *Tuss* and *Tranmer* the instant case does not present issues involving changes in future income or expenses, and so pursuant to §

10

1325(b)(3) the expenses of the Debtors must be determined under the "Means Test" of § 707(b)(2)(A) and (B). *Tranmer,* 355 B.R. at 245-46; *Tuss,* 360 B.R. at 691, 695.

The Trustee objects to the $200.00 in vehicle operation expense on Line 29 of Form B22C, contending that they are not entitled to deduct it when they are not actually making a payment to an underlying creditor, citing *Deadmond.* Michael testified that he calculated the $200 expense based on his experience and the age and condition of the Taurus and Aries.

*In re Carlin*, 348 B.R. 795, 796, 798 (Bankr. D. Or. 2006), the court wrote: "Debtor is entitled to an additional operating expense because his car is over six years old." Footnote 2 of *Carlin* states that in situations where no loan or lease payment exists on a vehicle that is over 6 years old and/or has 75,000 miles or more, an additional $200 operating expense is allowable. *Carlin*, 348 B.R. at 796 n.2. Footnote 2 concludes with the citation: "Internal Revenue Manual, Financial Analysis Handbook, Part 5, Chapter 8, § 5.8.5.5.2(3) (09-01-2005)." *Id.* This Court notes that Chapter 8 of Part 5 of the Internal Revenue Manual applies to the financial analysis required for offers in compromise and incorporates the Financial Analysis Handbook set forth in Chapter 15 of Part 5. *See* Internal Revenue Manual, Part 5, Chapter 8, § 5.8.5.1; *O'Connor*, 2008 WL 4516374, *12. When no ownership expense exists, the Internal Revenue Manual provides in Part 5, Chapter 8, that an additional operating expense of $200 is allowable if the car's age and mileage meets certain criteria. If no ownership expense exists and the car does not meet the age and mileage criteria, additional operating expense may be allowable under the special circumstances provision of 11 U.S.C. § 707(b)(2)(B) for an above-median debtor. The Internal Revenue Manual specifies that the national and local expense standards are guidelines and deviations are allowable. Internal Revenue Manual, Part 5, Chapter 15, § 5.15.1.7.5; *see*

*O'Connor* at *12.

In the instant case both the Debtors' Ford Taurus and Dodge Aries are over 6 years old. The Ninth Circuit BAP decision *In re Ransom*, 380 B.R. 799 (9th Cir. BAP 2007) quoted *Carlin*'s reference to the $200 extra operating expense for old vehicles as one of the "[n]umerous safeguards" in place to protect both debtors and creditors, stating right after the quote: "We agree with the court in *Carlin* . . . ." 380 B.R. at 808.

The Trustee cites *Deadmond* as authority which rejected a debtor's deduction of a transportation ownership expense.[4] However, the issue before the Court in the instant case is not vehicle ownership expense but rather vehicle operating expense for Debtors' aging Ford Taurus and Dodge Aries. The decision in *Deadmond* is not on point. The court in *Deadmond* did state, however, "this Court deems the *Ransom* decision to be highly persuasive authority." 2008 WL 191165 at * 3. It also noted that if a taxpayer has a car but no car payment, "only the operating costs portion of the transportation standard is used to figure the allowable transportation expense." *Id.*

Thus, following its prior decision in *O'Connor* in applying *Ransom* and *Carlin,* and by reference to the Internal Revenue Manual, Part 5, Chapters 8 and 15, this Court overrules the Trustee's objection to the extra $200 in vehicle operating expenses on Form B22C for the Debtors' 2 vehicles which are more than 6 years old.

## CONCLUSIONS OF LAW

---

[4] *Contra In re Pearson*, 390 B.R. 706 (10th Cir. BAP 2008), *In re Kimbro*, 389 B.R. 518 (6th Cir BAP 2008), *In re Young*, 392 B.R. 6 (Bankr. D. Mass 2008), *In re May* 390 B.R. 338 (BAnkr. S.D. Ohio 2008). This Court's allowance of ownership expense when no debt existed was overruled in *Deadmon*d.

1. This Court has jurisdiction of this Chapter 13 case under 28 U.S.C. § 1334(a).

2. Confirmation of Debtors' Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

3. Debtors failed to satisfy their burden of proof to show they satisfied the "disposable income" requirement of 11 U.S.C. § 1325(b)(1)(B) by not applying all their projected disposable income shown on Line 59 of Form B22C to make payments to unsecured creditors under the Plan, after application of §§ 101(10A), 1325(b)(2), 1325(b)(3), and §§ 707(b)(2)(A) and (B).

4. Debtors are allowed a $200 operating expense for old vehicles. *In re Ransom*, 380 B.R. 799 (9th Cir. BAP 2007); *In re Carlin*, 348 B.R. 795, 796, 798 (Bankr. D. Or. 2006); Internal Revenue Manual, Financial Analysis Handbook, Part 5, Chapter 8.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above, sustaining the Chapter 13 Trustee's objections in part and denying confirmation of the Debtors' Chapter 13 Plan; granting Debtors until December 3, 2008, to file an amended Chapter 13 Plan curing the Trustee's objection consistent with the above; granting the Trustee five days thereafter to file a response; and noticing a hearing on any further objections to confirmation at Great Falls on Friday, December 19, 2008.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana